**Pomerantz, LLP**
Jennifer Pafiti
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Phone Number: 310-405-7190
Fax Number: 917- 463 -1044
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SORIN GRIGORE, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>GTT COMMUNICATIONS, INC., RICHARD D. CALDER, JR., ERNIE ORTEGA, MICHAEL T. SICOLI, DANIEL M. FRASER, and STEVEN BERNS,<br><br>    Defendants. | Case Number:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMANDED |

Plaintiff Sorin Grigore ("Plaintiff") alleges the following upon personal knowledge as to allegations specifically pertaining to Plaintiff and, as to all other matters, upon the investigation of counsel, which included: (a) review and analysis of public filings with the United States Securities and Exchange Commission ("SEC") made by GTT Communications, Inc. ("GTT" or the "Company") and related parties; (b) review and analysis of press releases and other publications disseminated by GTT and related parties; (c) review and analysis of shareholder communications, conference calls and postings on GTT's website concerning the Company's public statements; (d) review and analysis of news articles concerning GTT and related parties; and (e) review of other publicly available information concerning GTT, related parties, and/or the Individual Defendants (as defined below).

## NATURE OF THE ACTION

1.      This is a federal securities class action brought on behalf of all persons or entities that purchased or otherwise acquired GTT publicly traded securities from May 5, 2016 through November 9, 2020, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff alleges that Defendants violated the Exchange Act by publishing false and misleading statements to artificially inflate the Company's stock price.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

2.    GTT operates a global communications network, providing telecommunications services to large, multinational enterprises, carriers, and governments across five continents.  Throughout the Class Period, GTT stated that its internal controls over financial reporting were "effective" and provided "reasonable assurance" that all required information was being disclosed.

3.    In truth, GTT's internal controls over financial reporting were inadequate, which led to years of inaccurate financial reporting, including failing to make adequate adjustments to the Company's Cost of Telecommunication Services and failing to recognize certain expenses.

4.    As a result of GTT's inadequate internal controls, the Company announced after market hours on August 10, 2020 that it would delay its filing of its quarterly report for the quarter ended June 30, 2020.  The Company stated it had identified "certain issues related to the recording and reporting of Cost of Telecommunications Services and related internal controls."

5.    On this news, GTT shares fell by $0.65, or over 11%, from closing at $5.61 on August 10, 2020 to close at $4.96 on August 11, 2020.

6.    On November 9, 2020, the Company announced its quarterly report for the quarter ended September 30, 2020 would be delayed as well.  The Company stated the delay was caused by the ongoing review and "examining the accounting

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

for Cost of Telecommunications Services and [. . .] a number of issues in connection with the Company's previously issued financial statements[.]"

7.     On this news, GTT shares fell by $0.04, or 1%, to close at $3.96 on November 9, 2020.

8.     Plaintiff and the other Class members have suffered significant damages due to Defendants' false and misleading statements and omissions.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered, the subsequent damages took place in, and the Company maintains locations in this judicial district.

12.     In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

14.     Defendant GTT is incorporated in the state of Delaware, and the Company's principal executive offices are located at 7900 Tysons One Place, Suite 1450, McLean, VA 22102.  GTT securities trade on the New York Stock Exchange ("NYSE") under the symbol "GTT."

15.     Defendant Richard D. Calder, Jr. ("Calder") was the Company's Chief Executive Officer ("CEO") from the start of the Class Period to May 31, 2020.

16.     Defendant Ernie Ortega ("Ortega") was the interim CEO of GTT from July 6, 2020 through the end of the Class Period.

17.     Defendant Michael T. Sicoli ("Sicoli") was the Company's Chief Financial Officer ("CFO") from the start of the Class Period to September 2019.

18.     Defendant Daniel M. Fraser ("Fraser") was the Company's interim CFO from September 2019 to April 6, 2020.

19.     Defendant Steven Berns ("Berns") was the Company's CFO from April 6, 2020 through the end of the Class Period.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

20.    Defendants Calder, Ortega, Sicoli, Fraser and Berns are collectively referred to herein as the "Individual Defendants."

21.    Each of the Individual Defendants:

a)    directly participated in the management of the Company;

b)    was directly involved in the day-to-day operations of the Company at the highest levels;

c)    was privy to confidential proprietary information concerning the Company and its business and operations;

d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

g)    approved or ratified these statements in violation of the federal securities laws.

22.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

23.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

24.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

25.    On May 5, 2016, GTT filed a Form 10-Q for the fiscal quarter ended March 31, 2016 (the "1Q 2016 10-Q").  Attached to the 1Q 2016 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Calder and Sicoli attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

26.    The 1Q 2016 10-Q stated the following, in pertinent part, regarding GTT's internal controls:

**Evaluation of Disclosure Controls and Procedures**

***Our management carried out an evaluation required by Rule 13a-15 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), under the supervision of and with the participation of our Chief Executive Officer ("CEO") and Chief Financial Officer***

**("CFO"), of the effectiveness of our disclosure controls and procedures as defined in Rule 13a-15 and 15d-15 under the Exchange Act ("Disclosure Controls").** Based on our evaluation, our CEO and CFO concluded that our disclosure controls and procedures are designed at a reasonable assurance level and are effective to provide reasonable assurance that information we are required to disclose in reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in Securities and Exchange Commission rules and forms and that such information is accumulated and communicated to our management, including our CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure. **The CEO and the CFO, with assistance from other members of management, have reviewed the effectiveness of our disclosure controls and procedures as of March 31, 2016, and based on their evaluation, have concluded that the disclosure controls and procedures were effective as of such date.**

**Changes in Internal Control over Financial Reporting**

**There were no changes in our internal control over financial reporting**, as defined in Rules 13a-15(f) and 15d-15(f) of the Securities Exchange Act of 1934, **that occurred during the period ended March 31, 2016 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting**.

(Emphasis added.)

27.     The 1Q 2016 10-Q also stated the following, in relevant part, regarding GTT's Cost of Telecommunications Services Provided:

**Cost of Telecommunications Services Provided**

**Cost of telecommunication services provided increased by $28.5 million, or 75.6%, from $37.7 million for the three months ended March 31, 2015 to $66.2 million for the three months ended March 31, 2016**. Consistent with our increase in revenue, the increase in cost of telecommunication services provided was principally driven by the acquisitions of MegaPath and One Source.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

On a constant currency basis using the average exchange rates in effect during the three months ended March 31, 2015, cost of telecommunication services provided would have been higher by $0.2 million for the three months ended March 31, 2016.

(Emphasis added.)

28.     On August 8, 2016, the Company filed a Form 10-Q for the fiscal quarter ended June 30, 2016 (the "2Q 2016 10-Q"). Attached to the 2Q 2016 10-Q were SOX certifications signed by Defendants Calder and Sicoli attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

29.     The 2Q 2016 10-Q stated, in relevant part, the following regarding GTT's internal controls:

**Evaluation of Disclosure Controls and Procedures**

***Our management carried out an evaluation required by Rule 13a-15 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), under the supervision of and with the participation of our Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), of the effectiveness of our disclosure controls and procedures as defined in Rule 13a-15 and 15d-15 under the Exchange Act ("Disclosure Controls").*** Based on our evaluation, our CEO and CFO concluded that our disclosure controls and procedures are designed at a reasonable assurance level and are effective to provide reasonable assurance that information we are required to disclose in reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in Securities and Exchange Commission rules and forms and that such information is accumulated and communicated to our management, including our CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure. ***The CEO and the CFO, with assistance from other members of management, have reviewed the effectiveness***

*of our disclosure controls and procedures as of June 30, 2016, and
based on their evaluation, have concluded that the disclosure controls
and procedures were effective as of such date*.

### Changes in Internal Control over Financial Reporting

During the three months ended June 30, 2016, we implemented
a new financial accounting system. In connection with the
implementation of this new system, we updated many of the processes
and procedures related to our internal control over financial reporting,
as needed. ***We do not believe the implementation of the new system or
the corresponding changes in processes and procedures has had or
will have a material or adverse effect on our internal control over
financing reporting.*** Except as otherwise described above, there have
been no other changes in our internal control over financial reporting
(as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act)
as of June 30, 2016, that has materially affected, or is reasonably likely
to materially affect our internal control over financial reporting.

(Emphasis added.)

30.     The 2Q 2016 10-Q also stated, in relevant part, the following regarding

GTT's Cost of Telecommunications Services Provided:

### Cost of Telecommunications Services Provided

***Cost of telecommunications services provided increased by
$16.8 million, or 32.7%, from $51.5 million for the three months
ended June 30, 2015 to $68.3 million for the three months ended June
30, 2016***. Consistent with our increase in revenue, the increase in cost
of telecommunications services provided was principally driven by the
acquisitions of OSN and Telnes, as well as organic growth.

On a constant currency basis using the average exchange rates in
effect during the three months ended June 30, 2015, cost of
telecommunications services provided would have been higher by $0.1
million for the three months ended June 30, 2016.

(Emphasis added.)

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

31.     On November 9, 2016, the Company filed a Form 10-Q for the fiscal
quarter ended September 30, 2016 (the "3Q 2016 10-Q").  Attached to the 3Q 2016
10-Q were SOX certifications signed by Defendants Calder and Sicoli attesting to
the accuracy of financial reporting, the disclosure of any material changes to the
Company's internal control over financial reporting and the disclosure of all fraud.

32.     The 3Q 2016 10-Q stated, in relevant part, the following regarding
GTT's internal controls:

**Evaluation of Disclosure Controls and Procedures**

*Our management carried out an evaluation required by Rule
13a-15 under the Securities Exchange Act of 1934, as amended (the
"Exchange Act"), under the supervision of and with the participation
of our Chief Executive Officer ("CEO") and Chief Financial Officer
("CFO"), of the effectiveness of our disclosure controls and
procedures as defined in Rule 13a-15 and 15d-15 under the Exchange
Act ("Disclosure Controls").* Based on our evaluation, our CEO and
CFO concluded that our disclosure controls and procedures are
designed at a reasonable assurance level and are effective to provide
reasonable assurance that information we are required to disclose in
reports that we file or submit under the Exchange Act is recorded,
processed, summarized and reported within the time periods specified
in Securities and Exchange Commission rules and forms and that such
information is accumulated and communicated to our management,
including our CEO and CFO, as appropriate, to allow timely decisions
regarding required disclosure. *The CEO and the CFO, with assistance
from other members of management, have reviewed the effectiveness
of our disclosure controls and procedures as of September 30, 2016,
and based on their evaluation, have concluded that the disclosure
controls and procedures were effective as of such date*.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

**Changes in Internal Control over Financial Reporting**

> *There were no changes in our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) as of September 30, 2016, that has materially affected, or is reasonably likely to materially affect our internal control over financial reporting.*

(Emphasis added.)

33.    The 3Q 2016 10-Q also stated the following, in pertinent part, regarding GTT's Cost of Telecommunications Services Provided:

**Cost of Telecommunications Services Provided**

> *Cost of telecommunications services provided increased by $14.8 million, or 27.8%, from $53.4 million for the three months ended September 30, 2015 to $68.2 million for the three months ended September 30, 2016.* Consistent with our increase in revenue, the increase in cost of telecommunications services provided was principally driven by the acquisitions of OSN and Telnes, as well as organic growth.

> On a constant currency basis using the average exchange rates in effect during the three months ended September 30, 2015, cost of telecommunications services provided would have been higher by $0.5 million for the three months ended September 30, 2016.

(Emphasis added.)

34.    On March 8, 2017, the Company filed a Form 10-K for the fiscal year ended December 31, 2016 (the "2016 10-K").  Attached to the 2016 10-K were SOX certifications signed by Defendants Calder and Sicoli attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

35.     The 2016 10-K stated, in relevant part, the following regarding GTT's internal controls:

**Management's Report on Internal Control over Financial Reporting and Attestation Report of the Registered Public Accounting Firm**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act). ***Management conducted an assessment of the effectiveness of our internal control over financial reporting*** based on the criteria set forth in Internal Control - Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework). ***Based on the assessment, management has concluded that its internal control over financial reporting was effective as of December 31, 2016, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with U.S. GAAP***. The effectiveness of our internal control over financial reporting as of December 31, 2016, has been audited by CohnReznick LLP, an independent registered public accounting firm, as stated in their report, which appears herein.

**Changes in Internal Control Over Financial Reporting**

During the year ended December 31, 2016, we implemented a new financial accounting system. In connection with the implementation of this new system, we updated many of the processes and procedures related to our internal control over financial reporting, as needed. ***We do not believe the implementation of the new system or the corresponding changes in processes and procedures has had or will have a material or adverse effect on our internal control over financing reporting. Except as otherwise described above, there were no other changes in our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) during the quarter ended December 31, 2016, that has materially affected, or is reasonably likely to materially affect our internal control over financial reporting.***

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(Emphasis added.)

36.     The 2016 10-K also stated the following, in pertinent part, regarding
GTT's Cost of Telecommunications Services Provided:

**Cost of Telecommunications Services Provided**

*Cost of telecommunications services provided increased by
$69.6 million, or 34.0%, from $204.5 million for the year ended
December 31, 2015 to $274.0 million for the year ended December 31,
2016.* Consistent with our increase in revenue, the increase in cost of
telecommunications services provided was principally driven by the
Acquisitions, as well as organic growth and the purchase of certain
customer contracts.

On a constant currency basis using the average exchange rates in
effect during the year ended December 31, 2015, cost of
telecommunications services provided would have been higher by $1.0
million for the year ended December 31, 2016.

(Emphasis added.)

37.     On March 1, 2018, the Company filed a Form 10-K for the fiscal year
ended December 31, 2017 (the "2017 10-K").  Attached to the 2017 10-K were
SOX certifications signed by Defendants Calder and Sicoli attesting to the accuracy
of financial reporting, the disclosure of any material changes to the Company's
internal control over financial reporting and the disclosure of all fraud.

38.     The 2017 10-K stated, in pertinent part, the following regarding GTT's
internal controls:

**Management's Report on Internal Control over Financial
Reporting and Attestation Report of the Registered Public
Accounting Firm**

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act). ***Management conducted an assessment of the effectiveness of our internal control over financial reporting based*** on the criteria set forth in Internal Control - Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework). ***Based on the assessment, management has concluded that its internal control over financial reporting was effective as of December 31, 2017, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with U.S. GAAP***. The effectiveness of our internal control over financial reporting as of December 31, 2017, has been audited by CohnReznick LLP, an independent registered public accounting firm, as stated in their report, which appears herein.

**Changes in Internal Control Over Financial Reporting**

***Except for the implementation of certain internal controls related to the adoption of the new revenue recognition standard (Topic 606), there were no changes in our internal control over financial reporting*** (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) ***during the year ended December 31, 2017, that materially affected, or are reasonably likely to materially affect, our internal control over financial reporting***. The Company implemented new controls as part of its effort to adopt Topic 606. The adoption of Topic 606 required the implementation of new accounting processes, which changed the Company's internal controls over revenue recognition and financial reporting. We implemented these internal controls to ensure we adequately evaluated our contracts and properly assessed the impact of Topic 606 on our financial statements to facilitate its adoption in 2018.

(Emphasis added.)

39.    The 2017 10-K also stated the following, in pertinent part, regarding GTT's Cost of Telecommunications Services Provided:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

**Cost of Telecommunications Services Provided**

>    ***Cost of telecommunications services provided increased by $152.5 million, or 54.5%, from $279.6 million for the year ended December 31, 2016 to $432.1 million for the year ended December 31, 2017.*** Consistent with our increase in revenue, the increase in cost of telecommunications services provided was principally driven by 2017 Acquisitions and the purchase of certain customer contracts.

>    On a constant currency basis using the average exchange rates in effect during the year ended December 31, 2016, cost of telecommunications services provided would have been higher by $1.0 million for the year ended December 31, 2017.

(Emphasis added.)

40.    On March 1, 2019, the Company filed a Form 10-K for the fiscal year ended December 31, 2018 (the "2018 10-K"). Attached to the 2018 10-K were SOX certifications signed by Defendants Calder and Sicoli attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

41.    The 2018 10-K stated, in pertinent part, the following regarding GTT's internal controls:

**Management's Report on Internal Control over Financial Reporting and Audit Report of the Registered Public Accounting Firm**

>    Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act). ***Management conducted an assessment of the effectiveness of our internal control over financial reporting*** based on the criteria set forth in Internal Control - Integrated Framework issued by the Committee of Sponsoring Organizations of

the Treadway Commission (2013). ***Based on the assessment,
management has concluded that its internal control over financial
reporting was effective as of December 31, 2018, to provide
reasonable assurance regarding the reliability of financial reporting
and the preparation of financial statements in accordance with U.S.
GAAP***. The effectiveness of our internal control over financial
reporting as of December 31, 2018, has been audited by CohnReznick
LLP, an independent registered public accounting firm, as stated in
their report, which appears herein.

**Changes in Internal Control Over Financial Reporting**

> *Except for the 1) Company's design and implementation of new
> and enhanced controls to remediate the material weakness described
> above, and 2) the implementation of certain internal controls related
> to the adoption of the new leasing standard (Topic 842), there were
> no changes in our internal control over financial reporting* (as
> defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act)
> *during the three months ended December 31, 2018, that materially
> affected, or are reasonably likely to materially affect, our internal
> control over financial reporting*. The Company implemented new
> controls as part of its effort to adopt Topic 842. The adoption of Topic
> 842 required the implementation of new accounting processes, which
> changed the Company's internal controls over lease accounting. We
> implemented these internal controls to ensure we adequately evaluated
> our leases and properly assessed the impact of Topic 842 on our
> financial statements to facilitate its adoption in 2019.

(Emphasis added.)

42.     The 2018 10-K also stated, in relevant part, the following regarding

GTT's Cost of Telecommunications Services:

**Cost of Telecommunications Services**

> *Cost of telecommunications services increased by $387.3
> million, or 89.6%, from $432.1 million for the year ended December
> 31, 2017 to $819.4 million for the year ended December 31, 2018.*
> Recurring cost of telecommunications services was approximately 94%

and 95% of total cost of telecommunications services for the year ended December 31, 2018 and 2017, respectively. Consistent with our increase in revenue, the increase in cost of telecommunications services was principally driven by the 2017 Acquisitions and 2018 Acquisitions.

On a constant currency basis using the average exchange rates in effect during the year ended December 31, 2017, cost of telecommunications services would have been lower by $12.2 million for the year ended December 31, 2018.

(Emphasis added.)

43.     On March 2, 2020, the Company filed a Form 10-K for the fiscal year ended December 31, 2019 (the "2019 10-K"). Attached to the 2019 10-K were SOX certifications signed by Defendants Calder and Fraser attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

44.     The 2019 10-K stated the following, in relevant part, about GTT's internal controls:

**Management's Annual Report on Internal Control over Financial Reporting**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act). ***Management conducted an assessment of the effectiveness of our internal control over financial reporting*** based on the criteria set forth in Internal Control - Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission. ***Based on the assessment, management has concluded that our internal control over financial reporting was effective as of December 31, 2019, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with U.S.***

*GAAP*. The effectiveness of our internal control over financial reporting as of December 31, 2019, has been audited by CohnReznick LLP, an independent registered public accounting firm, as stated in its report, which appears herein.

**Changes in Internal Control Over Financial Reporting**

*Except for the Company's design and implementation of certain controls related to the adoption of the new leases standard (ASC 842), there were no changes in our internal control over financial reporting* (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) *during the year ended December 31, 2019, that have materially affected, or are reasonably likely to materially affect our internal control over financial reporting*. The Company implemented new controls as part of its effort to adopt Topic 842. The adoption of Topic 842 required the implementation of new accounting processes, which changed the Company's internal controls over lease accounting. We implemented these internal controls to ensure we adequately evaluated our leases and properly assessed the impact of Topic 842 on our financial statements to facilitate its adoption in 2019.

(Emphasis added.)

45.    The 2019 10-K stated the following, in pertinent part, about GTT's Cost of Telecommunications Services:

**Cost of Telecommunications Services**

*Cost of telecommunications services increased by $122.5 million, or 14.9%, from $819.4 million for the year ended December 31, 2018 to $941.9 million for the year ended December 31, 2019*. Recurring cost of telecommunications services was approximately 93% and 94% of total cost of telecommunications services for the years ended December 31, 2019 and 2018, respectively. Consistent with our increase in revenue, the increase in cost of telecommunications services was principally driven by the 2018 Acquisitions.

On a constant currency basis using the average exchange rates in effect during the year ended December 31, 2018, cost of

telecommunications services would have been higher by $21.6 million for the year ended December 31, 2019.

(Emphasis added.)

46.     The above statements in paragraphs 25-45 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose that: (1) the Company's internal controls suffered from issues related to the recording and reporting of Cost of Telecommunications Services; (2) the Company's previously reported Cost of Telecommunications was inaccurate or accounted for unsupported adjustments; (3) inadequate internal controls would result in delays in the Company's 10-Q quarterly reports; and (4) as a result of the foregoing, Defendants' public statements were materially false and/or misleading and/or lacked a reasonable basis.

## THE TRUTH EMERGES

47.     On August 10, 2020, after market hours, GTT filed a NT 10-Q notification of inability to timely file Form 10-Q for the quarter ended June 30, 2020 ("2Q NT 10-Q").

48.     The 2Q NT 10-Q stated, in relevant part, the following regarding the delay in the quarterly report:

GTT Communications, Inc. (the "Company") is unable to file its Quarterly Report on Form 10-Q for the quarter ended June 30, 2020 (the "Form 10-Q") within the prescribed time period without

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

unreasonable effort or expense. ***In the course of closing the Company's books for the quarter ended June 30, 2020, the Company identified certain issues related to the recording and reporting of Cost of Telecommunications Services and related internal controls***.

Upon identifying these issues, the Company informed the Audit Committee of the Board of Directors (the "Audit Committee") and CohnReznick LLP, the Company's independent registered public accounting firm (the "Independent Auditor"). ***The Company's management and the Audit Committee, with assistance from outside counsel and consultants, are reviewing (the "Review") these issues and assessing the effect, if any, on the Company's financial statements for the quarter ended June 30, 2020 and previously issued financial statements, as well as whether there are any material weaknesses in the Company's internal controls.***

At this time, the Company does not know whether the Review will identify any issues other than those described above. Although the Company plans to file the Form 10-Q as soon as possible after the completion of the Review, the Company does not anticipate filing the Form 10-Q on or before August 17, 2020, the extended period provided for the filing under Rule 12b-25(b) of the Securities Exchange Act of 1934, as amended. The Company is unable to predict a specific filing date at this time due to the early stage of the Review.

(Emphasis added.)

49.    On this news, GTT shares fell by $0.65, or over 11%, from closing at $5.61 on August 10, 2020 to close at $4.96 on August 11, 2020.

50.    On November 9, 2020, GTT filed a NT 10-Q notification of inability to timely file Form 10-Q for the quarter ended September 30, 2020 ("3Q NT 10-Q"). GTT had yet to file a 10-Q for its second quarter.

51.    The 3Q NT 10-Q stated, in relevant part, the following regarding the delay in the quarterly report:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

As reported by the Company in its prior filings with the Securities and Exchange Commission (the "SEC"), *in the course of closing the Company's books for the quarter ended June 30, 2020, the Company identified certain issues related to the recording and reporting of Cost of Telecommunications Services and related internal controls.* The Company's management and the Audit Committee (the "Audit Committee") of the Company's Board of Directors (the "Board"), with assistance from outside counsel and consultants, commenced a review (the "Review") with respect to these issues and are assessing the effect, if any, on the Company's unissued and previously issued financial statements, as well as whether there are any material weaknesses in the Company's internal controls.

In addition, as previously disclosed, *the Review is examining the accounting for Cost of Telecommunications Services and has identified a number of issues in connection with the Company's previously issued financial statements*, including: *(i) adjustments made without adequate support to Cost of Telecommunications Services during the year ended December 31, 2019 and the three months ended March 31, 2020* that had the effect of removing expenses from the Company's income statement at quarter-end and then recognizing certain of those expenses in subsequent quarters; and *(ii) failures during the years ended December 31, 2018 and 2017 to recognize certain expenses on the Company's income statement by recording such expenses to goodwill* and thereby attributing such expenses to pre-acquisition accruals, without adequate support, for companies that had been acquired. In addition, *the Review is also examining: (x) certain intercompany transactions recorded during the years ended December 31, 2019, 2018, 2017 and 2016, and each of the quarters during the years ended December 31, 2019, 2018, 2017 and 2016*; (y) accounting for bad debt expense during the year ended December 31, 2019; and (z) accounting for credits issued to customers during the years ended December 31, 2019 and 2018 and the three months ended March 31, 2020.

Furthermore, as disclosed in prior filings with the SEC, *the Company is also reassessing its previous conclusions regarding the effectiveness of its internal control over financial reporting*. At the conclusion of the Review, the Company expects the Review to identify material weaknesses in the Company's internal control over financial

reporting, and the Company intends to continue to evaluate and implement remedial measures to address any such material weaknesses.

At this time, the Company has not concluded its Review and there is no assurance that additional items will not be identified. ***The Company's management and the Audit Committee, with assistance from outside counsel and consultants, are continuing to assess the effect of the matters described above on the Company's financial statements for the years ended December 31, 2019, 2018, 2017 and 2016, each of the quarters during the years ended December 31, 2019, 2018, 2017 and 2016 and the quarter ended March 31, 2020.*** As of the date of filing this Form 12b-25, the Company is unable to estimate the total potential impact of the issues described herein on its previously issued financial statements.

(Emphasis added.)

52.    On this news, GTT shares fell by $0.04, or 1%, from opening at $4.00 on November 9, 2020 to close at $3.96.

53.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

54.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired GTT securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of GTT and its subsidiaries, members of the Individual Defendants' immediate families and their legal

representatives, heirs, successors or assigns and any entity in which Defendants

have or had a controlling interest.

55.    The members of the Class are so numerous that joinder of all members

is impracticable.  Throughout the Class Period, GTT securities were actively traded

on the NYSE.  While the exact number of Class members is unknown to Plaintiff

at this time and can be ascertained only through appropriate discovery, Plaintiff

believes that there are hundreds, if not thousands of members in the proposed Class.

56.    Plaintiff's claims are typical of the claims of the members of the Class

as all members of the Class are similarly affected by defendants' wrongful conduct

in violation of federal law that is complained of herein.

57.    Plaintiff will fairly and adequately protect the interests of the members

of the Class and has retained counsel competent and experienced in class and

securities litigation.  Plaintiff has no interests antagonistic to or in conflict with

those of the Class.

58.    Common questions of law and fact exist as to all members of the Class

and predominate over any questions solely affecting individual members of the

Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged
  herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of GTT;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused GTT to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of GTT securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

59.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it

impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

60.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- GTT shares met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- As a public issuer, GTT filed periodic public reports;

- GTT regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- GTT's securities were liquid and traded with sufficient volume during the Class Period; and

- GTT was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

61.    Based on the foregoing, the market for GTT securities promptly digested current information regarding GTT from all publicly available sources and reflected such information in the prices of the securities, and Plaintiff and the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

members of the Class are entitled to a presumption of reliance upon the integrity of the market.

62.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants**

63.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.    This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

65.    During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

66.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that
they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state
  material facts necessary in order to make the statements made,
  in light of the circumstances under which they were made, not
  misleading; or

- engaged in acts, practices and a course of business that operated
  as a fraud or deceit upon plaintiff and others similarly situated
  in connection with their purchases of GTT securities during the
  Class Period.

67.     Defendants acted with scienter in that they knew that the public
documents and statements issued or disseminated in the name of GTT were
materially false and misleading; knew that such statements or documents would be
issued or disseminated to the investing public; and knowingly and substantially
participated, or acquiesced in the issuance or dissemination of such statements or
documents as primary violations of the securities laws.  These Defendants by virtue
of their receipt of information reflecting the true facts of GTT, their control over,
and/or receipt and/or modification of GTT's allegedly materially misleading
statements, and/or their associations with the Company which made them privy to

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

confidential proprietary information concerning GTT, participated in the fraudulent scheme alleged herein.

68.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other GTT personnel to members of the investing public, including Plaintiff and the Class.

69.    As a result of the foregoing, the market price of GTT securities was artificially inflated during the Class Period.  In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of GTT securities during the Class Period in purchasing GTT securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

70.    Had Plaintiff and the other members of the Class been aware that the market price of GTT securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased GTT securities at the artificially inflated prices that they did, or at all.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

71.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

72.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of GTT securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

73.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74.     During the Class Period, the Individual Defendants participated in the operation and management of GTT, and conducted and participated, directly and indirectly, in the conduct of GTT's business affairs. Because of their senior positions, they knew the adverse non-public information about GTT's misstatement of revenue and profit and false financial statements.

75.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to GTT's financial condition and results of operations, and to correct promptly any public statements issued by GTT which had become materially false or misleading.

76.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which GTT disseminated in the marketplace during the Class Period concerning GTT's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause GTT to engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were "controlling persons" of GTT within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of GTT securities.

77.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by GTT.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

b)      awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

c)      awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d)      awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: January 29, 2021                    Respectfully submitted,

**POMERANTZ LLP**

*/s/Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Phone Number: 310-405-7190
Fax Number: 917- 463 -1044
jpafiti@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Friday, January 22, 2021

## GTT Communications, Inc.  (GTT)

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.  I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against GTT Communications, Inc. ("GTT" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire GTT securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired GTT securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in GTT securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


**Name**

**Print Name**
Sorin Grigore

**Signature**

1

**GTT Communications, Inc. (GTT)**                                                    **Grigore, Sorin**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 3/16/2020 | 2 | $9.1874 |
| Purchase | 3/18/2020 | 59 | $8.5000 |
| Purchase | 5/11/2020 | 57 | $8.6975 |
| Purchase | 5/29/2020 | 70 | $8.5000 |
| Purchase | 6/2/2020 | 75 | $7.9500 |
| Purchase | 6/11/2020 | 70 | $7.8987 |
| Purchase | 6/18/2020 | 67 | $7.4300 |
| Purchase | 7/14/2020 | 75 | $6.6711 |
| Purchase | 8/18/2020 | 3 | $4.5774 |